United States Court of Appeals for the Eighth Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the Eighth Circuit is now in session. All persons having business before this honorable court may now draw near and they will be heard. God save the United States and this honorable court. Very well. Good afternoon. Thank you to all counsel for joining us this afternoon by videoconference for this argument session. The court will hear five cases for argument this afternoon as set forth in the calendar. Madam clerk, before you call the first case, all right, very good, I wasn't seeing Mr. White but I see him now, so please call the first case for argument. Case number 20-2151 from the Southern District of Iowa, Susan Thayer v. Planned Parenthood of the Heartland. All right, let me just ask all counsel to keep your microphones on mute except when you are presenting. And with that, we'll hear first from Mr. Shandoval. Thank you, your honor, and good afternoon. My name is Chris Shandoval. I represent the appellant Susan Thayer in this appeal. I'd ask to reserve five minutes for rebuttal. You may reserve, but you'll have to watch the clock because if you proceed past the five minutes, the clock will continue to run. Yes, your honor. Thank you. All right. Thank you, your honor. And may it please the court, this is not a hard case. To the contrary, this is just a jury case. And the district court erred by playing the role of fact finder at summary judgment instead of setting this case for trial. That error comes at a steep cost to Iowa taxpayers and to the thousands of women that Planned Medicaid billing rules are designed to keep providers from billing for things that they're not supposed to and to keep them from compromising the safety of their patients. Each of our two claims implicates both of these concerns. First, the evidence shows that Planned Parenthood was illegally dispensing prescription contraceptives without an order from a clinician. Planned Parenthood knew that this was illegal and that it was dangerous. See Paul Alabi's email at page 11 of the addendum to our brief. It knew that it violated its own written protocol as it conceded repeatedly multiple times below in its summary judgment papers and through its rule 30B6 witness. And it knew that if Iowa Medicaid found out that it would refuse to reimburse it for these contraceptives as Iowa Medicaid explicitly told Planned Parenthood after an audit in 2006. So Planned Parenthood started... Account saving. The audit didn't uncover or didn't address the issues that you're raising here, David. And I mean, they had the information that's at issue in this case. But the state didn't take any action at that point, did they? Yes, it did, your honor. It demanded, I think, around $300 or $250 in recoupment. Those were not the oral contraceptives, were they? That was a different factual issue. And as I understand it, Planned Parenthood is arguing that the issue here was actually brought to the auditor's attention. At least they had the information in their possession and they didn't take any action. Why doesn't that affect materiality? Two responses, your honor. First, on the premise and then on the merits. First, on the premise, at best, this is a question that should go to the jury. Materiality is a fact-based question. If they want to argue that there are different inferences to be drawn from the results of the audit, that's an argument for the jury and not for the judge at summary judgment. But secondly, on the merits, we rebutted that argument preemptively in our opening brief and explained and demonstrated that the repayment that Iowa Medicaid demanded was for a contraceptive. It was an injectable contraceptive, but it was a contraceptive that was dispensed prior to obtaining a written order from a clinician. And that's the exact reasoning that Iowa Medicaid gave to Planned Parenthood for why it was demanding repayment. Here we have contraceptives that are prescription contraceptives, and our claim is that Planned Prior to obtaining an order from a clinician, sometimes without ever obtaining an order from a clinician. So the difference between an injectable contraceptive that can only be dispensed with an order from a clinician and an oral contraceptive that can only be dispensed with an order from a clinician is really a distinction without a difference, and they haven't provided the court with any answers. Did the auditors have information about oral contraceptives during that audit? They did not have any. They had information, they had patient files showing that some injectable contraceptives had been dispensed and that some oral contraceptives had been dispensed. Were those files, did those files indicate the same sort of violations or alleged violations that you're raising in this appeal? Not for the date of service that Iowa Medicaid was explicitly auditing in that audit. I guess I should ask, are they similar? I understand they may be from a different time period, but are they similar sorts of violations? No, Your Honor, they're not, and here's the reason why. So when Iowa Medicaid conducts an audit, when they conducted this audit, they asked for the files pertaining to specific dates of service. So they said, we want to see the files for January 3, 2005 for this particular patient and this particular service that was provided. And so Planned Parenthood was required to give only the patient files as to that specific date of service and as to that specific service that was being audited. And so of all the dispensings that Planned Parenthood has identified and said, well, these are other examples of times where we dispensed without an order from a clinician, for each of those except for one, the date of service being audited was not the same as the date of service for the dispensing that they claim Iowa Medicaid missed. So Iowa Medicaid didn't miss anything. It just wasn't looking for those dates of service. Now that one date of service where they were looking and they did not flag the dispensing as being illegal, there was a good reason for that. Because if you look at the patient files that Iowa Medicaid had, there was a standing order for that dispensing that covered that dispensing in the file. So if Planned Parenthood had standing orders in the files, that would be an order from a clinician that justified the dispensings that are at issue in this case, but we don't have that in the dispensings that are at issue here. So Iowa Medicaid made it very clear that without a standing order, without a clinician's order, that you may not dispense without an order, that it's a violation of Iowa law, directed Planned Parenthood to this relevant statute, and Planned Parenthood, instead of learning from that mistake and making sure they had an order before dispensing, at least had a verbal order before dispensing going forward, they did the exact opposite. They started backdating their patient files to make it look like they had an order on when in reality it was a clinician assistant or a nurse who was dispensing contraceptives without an order for those contraceptives. She would then go in, write in the date, write in the script for the contraceptive, and then sometime days or even weeks later, a clinician would come back and sign that order, which was basically preemptively backdated so that the signature appeared to have been signed on the day that the drug was dispensed when in reality it wasn't. And Planned Parenthood actually conceded that it was backdating in their summary judgment papers. There was a discussion about this very question, and on page 111 of the Joint Appendix, paragraphs 115 through 119, that's 11JA2719, they were discussing and responding to a situation where there was testimony that a patient, patient number 5566, had received contraceptives from a clinic assistant before obtaining an order from a clinician, and that those files, those orders, were signed later and backdated. And Planned Parenthood, again, at 11JA2719, conceded that both of those orders were signed after the fact. And that backdating is very important and very significant because it proves several things about this case. It proves materiality. It proves that Planned Parenthood knew that they learned a lesson from the IME audit. The lesson they learned was they needed to backdate their files to make it appear like they were getting orders when they were supposed to. And it also proves that this was done knowingly. Planned Parenthood claims that these were innocent mistakes, that this was just sloppy billing, but you don't backdate sloppy billing, and you don't backdate innocent mistakes. You do backdate if you realize that what you're doing is illegal and you're trying to cover it up. And that backdating is consistent with the email that's at page 11 of the addendum from Paula Labe, one of the senior clinicians at Planned Parenthood, who told upper management, look, we all understand that we cannot dispense contraceptives without an order. And that was consistent with their own protocols required at which they conceded, Planned Parenthood conceded multiple times below under any situation. And we described these concessions in our brief, our reply brief, the first full paragraph on page 11. I'll add in 10JA2441, which is a concession they made after needing an order before changing prescriptions. They conceded multiple times that their protocols require the same thing that the law requires, which is at least a verbal order from a clinician before dispensing. They were not doing that. They were backdating. Paula Labe in her email admitted they all understood that what they were doing was illegal and that there were clinicians who were worried about losing their licenses. There were LPNs who were worried about losing their licenses because of what they were doing. And nothing was done to fix that. In fact, Ms. Obbie sent an email at the end of December 2008, which is at 3JA718 of the Joint Appendix, saying this problem is still going on at the end of the three-year time period in question. So all of this evidence together demonstrates that the evidence was more sufficient to go to the jury, even assuming Planned Parenthood might have reasonably believed it could just comply with its protocols in order to comply with the law. The fact of the matter is its protocols required the same thing that the law required, which was an order before dispensing contraceptives. Planned Parenthood repeatedly violated its protocols, thus violating Iowa law, and the first question should have gone to a jury. As to our second claim, the evidence clearly shows that Planned Parenthood delayed post-abortion follow-up visits to hide the fact that they were abortion-related and then brazenly billed Medicaid for them. Planned Parenthood, again, knew that these visits were abortion-related, as evidenced by the fact that they charged paying patients for these visits. That's part of the lump sum. They charged patients for the abortion itself. And then went and turned around and charged Medicaid for the exact same follow-up visits for Medicaid patients. It also knew that billing Medicaid for these visits violated Iowa's Medicaid billing rules, which is clear from page 13 of the addendum. And it knew that Iowa Medicaid would refuse to pay for these visits if it ever found out, as the district court correctly held below at 1JA252. So Planned Parenthood did something similar as backdating. They hid the abortion-related nature of these visits from Medicaid using billing codes that signified things like, quote-unquote, follow-up examination following an unspecified surgery in order to cover up what the actual patient files clearly show. And I would just encourage the court, as to the second claim, to compare Planned Parenthood's abortion follow-up visit protocol, which is at, I'm sorry, the protocol which is towards the end of our addendum, that's at pages 14 through 15. And then go ahead and compare that protocol to the patient files that we were able to obtain in the records, specifically the files for patient 8696 and 6852. And what the court will see is those visits clearly show, those files clearly show, specifically at 15JA3922 and 15JA4006, that these visits were clearly abortion-related. Planned Parenthood was clearly following the exact protocol laid out for post-abortion examinations, and yet they still brazenly billed Medicaid for these routine post-abortion visits, knowingly violated Iowa Medicaid rules, and as a result defrauded Medicaid of those funds. So for all these reasons, all this evidence should have gone to a jury. Planned Parenthood's protocol-based defenses on our first claim and its global billing period defense as to our second claim, fail as a matter of law. And this court should reverse and remand for trial. Unless there are any further questions, I'll save the remainder of my time for rebuttal. Very well, you may do so. Thank you for your argument. Thank you, Your Honor. Mr. White, we'll hear from you. Thank you, Your Honor. May I please the court, Carter White, on behalf of the defendant, Appelli. On the contraceptive dispensing issue, Chief Judge Jarvie correctly interpreted the factual record Counsel, I'm sorry. Judge Gallatin, I don't believe the clock has stopped or restarted. I apologize to interrupt, Counsel. Understood. Hold on, Mr. White. We'll let the clerk sort that out. All right, you may proceed. Thank you. So on the contraceptive dispensing issue, Chief Judge Jarvie correctly interpreted the factual record in Iowa law as allowing PPH to dispense contraceptives upon its physician-issued medical protocols. And on the abortion billing issue, Judge Jarvie correctly found that a relator, after nine years of litigation, has produced no evidence PPH was actually billing for abortion-related services, let alone knowingly so. On the contraceptives, the difference between an order and a prescription is key. Relators claim, as pled, is that OCPs were dispensed without or prior to a physician's order. Now, her whole argument below as to why that was, was that she claimed a physician needed to actually write the prescription instead of PPH's nurse clinicians. However, Judge Jarvie correctly found that Iowa law distinguishes between prescriptions and orders, referring in multiple places to prescriptions or orders, and defining prescription drug order as just one type of order. Thus, in accordance with its plain meaning, order is an expansive term that includes PPH's physician-issued medical protocols. PPH could thus, in accordance with those protocols, dispense contraceptives upon the prescriptions written by its nurse clinicians who have independent prescribing authority under Iowa law. With respect to the specific false claims challenged by Relator in this appeal, she challenges 17 instances of OCP dispensing, which are listed at pages 38 to 40 of her brief. Each of those 17 instances deal with an extra cycle of OCPs being dispensed on an existing prescription or a change in brand to manage side effects. She does not challenge that the initial prescription was written in accordance with the medical protocols by a clinician after a full physical examination. So, all of her argument and testimony about the lack of a prescription does not support her current theory on appeal. And as to these 17 instances of dispensing, Chief Judge Jarvie was well within his discretion in concluding that that claim was not pled because Relator is not complaining about the lack of a physician's order, she is complaining about the failure to document a call to a clinician. Clearly, a clinician and physician are not the same thing. On the merits, she has an extremely high bar to climb. Her theory of falsity is based on an implied false certification theory because there is no representation about compliance with the law on the claim forms or other misrepresentation. Under the implied false certification theory, by submitting the claim form at all, PPH was impliedly certifying compliance with its provider agreement, which does contain a requirement that it comply with all applicable laws. The Supreme Court in Escobar explained that this theory is only recognized in limited circumstances and the Relator must prove that PPH made a specific representation about the goods and services provided and that the failure to disclose a legal violation rendered that statement misleading. Relator has never identified a misleading statement or explained why it is misleading and therefore failed to fulfill her burden on summary judgment. Further, to allow businesses to prioritize compliance obligations and so that they don't face the threat of trouble damages for every contractual or regulatory misstep, the Supreme Court has emphasized the need to strictly enforce the rigorous and demanding knowledge and materiality requirements. Relator must prove that PPH knew it was violating the law and that that was material to IME's payment decision. In light of the IME audit, that is impossible. In responding to the audit, PPH submitted to IME medical records showing the exact practices Relator challenges at pages 38 to 40 of her brief and IME did not cite PPH for it. PPH was not trying to hide anything. It submitted the medical records and IME did not demand recoupment. Chief Judge Jarvi was correct in holding that as very strong evidence that these requirements were not material. This issue may be decided at summary judgment because Relator has presented no evidence from which a reasonable jury could conclude that these requirements were material. She quibbles with the audit saying that although the exact date of service requested did not relate to these practices, but PPH submitted medical records and these records are a page that lists various line items of different dates of dispensing. On the exact same page as the date of service requested, there were instances of the exact practices she challenges. There is no dispute that IME had these records in front of it, was looking at them, and did not cite PPH for any violations. Relator's counsel also raised the issue of backdating. We do not concede there was any backdating here. No clinician signed something and then put an earlier date on there. First of all, her expert only identified two instances of purported backdating, so this is not a common practice as she claims it to be. Further, what we see in these instances is just an execution of the protocols. The staff dispensing the contraceptives wrote down the name of the contraceptive dispensed and the date it was dispensed, and then the clinician signed that order the next time they were in the clinic, which is just an execution of the protocols which require the clinician to co-sign the order as soon as possible. And finally, on this subject, Relator's counsel raised some emails. While they do acknowledge some issues with compliance with the protocols, those relate to separate issues not challenged in this appeal involving hope examinations and injectable contraceptives. And even in those instances, the staff repeatedly tried to fix these problems, talking to people, discussing enhanced training, and repeatedly saying that these protocols must be followed. Turning to the abortion billing issue... Wait, before you do that, before you do that, if I could raise one question back on the audit. Sure. Could you elaborate a little bit on what you mean? You say the date of... If I understand the way Mr. Shandoval is describing this audit, the state comes in and asks about a particular date of service. And you say on the same document that shows the date of service was revealed, these instances that you say are comparable to what's at issue in our case. But how do we know whether the audit would encompass reviewing the other things on the document that you're referring to? There isn't evidence in the record saying exactly what the auditors reviewed. But it is undisputed that these records were in front of the auditors. They were looking at them. Their mandate is to find instances where Medicaid reimbursed for non-compensable services. It's very simply laid out on there with the dates, the medications, and the signatures. So even a cursory review of the document would have revealed the practices that Relator is complaining about. Okay, thank you. Go ahead if you want to move on to your next topic. So turning to the abortion billing issue, there is no evidence PPH was billing for non-covered abortion-related services. At each challenge visit, the patients were provided covered services that PPH could legally bill for in the form of birth control counseling or infection-related treatment. The Medicaid billing rules are crystal clear that providers may charge for these covered services even if rendered in connection with a non-covered abortion. Lacking any evidence of abortion-related billing, Relator claims that the choice of CPT codes, 99213 and 99214 codes, must be hiding some abortion-related care. But that argument fails because her own expert acknowledged that the choice of these codes is exceedingly complex and that reasonable minds can disagree about the proper code to apply to these challenge visits. So a nefarious purpose is neither a necessary nor a logical conclusion from the choice of billing codes. Further, there is no evidence that anyone at PPH even thought about billing for abortion-related services. Relator's counsel raised the protocols, but they specifically state that there would be no charge for follow-up care related to an abortion. And PPH did not bill for some covered services around the time of these abortions, such as pregnancy tests and birth control. In light of that evidence, no reasonable jury could conclude that PPH was billing for abortion-related services, let alone knowingly so. That completes my presentation on why the judgment should be affirmed, so if there are no further questions, I would be happy to submit the case. I'll submit the case on behalf of the appellee. All right, thank you for your argument. Mr. Shandoval, we'll hear from you in rebuttal. Thank you, Your Honor. I'll return briefly first to the IME audit in 2006. So we responded to the district court's reasoning as to what, if anything, can be inferred from other instances of dispensing contraceptives that were contained within the patient files that were submitted to IME, but which IME explicitly said those were not dates of service that it was looking at. So at pages 44 through 47 of our opening brief, we discussed the much more reasonable conclusion and inference to be drawn, which is that IME simply was not looking at those dates of service. If you look at it, we were able to obtain and discover the entire patient files that IME was looking at, and for each patient file requested, there's a note indicating the specific date of service that IME was looking at. And so when Planned Parenthood submitted a patient file for that specific date of service, of course within those files there's going to be a long chart containing years' worth of dates sometimes of contraceptives that were dispensed over many months and maybe many years even. And so what Planned Parenthood said is, well, at some point years before we dispensed contraceptives and we weren't flagged for those dispensings. But the reality is IME told Planned Parenthood they weren't looking at that date of service. If they were looking at that date of service, they would have requested the entire patient file for that specific date. Without the entire patient file, it was impossible for IME to determine whether or not there might have been a standing order in the file elsewhere or whether or not there might have been a verbal order in the file elsewhere. But the main point to make about all of this, we think the inference is on our side, but the inferences should be drawn by a jury, not by a judge at summary judgment. I start out this case by saying I think this is an easy case. One of the things that makes this case so easy is that Planned Parenthood's protocols required essentially the same thing that the statute required, which is to obtain at least a verbal order from a clinician before dispensing contraceptives to patients. Planned Parenthood repeatedly failed to do that, and therefore even assuming it could possibly have a defense under the law so long as it followed its own protocols, it repeatedly violated those protocols and therefore repeatedly violated Iowa law. It knew what it was doing, it knew that it was illegal, and it knew from the audit that IME would care and would refuse to pay it if IME found out. And that's why Planned Parenthood began backdating patient files in order to cover up their illegal dispensing. Finally, as to the second claim before the court, billing for abortion-related services, all the court needs to do and all that anyone at Planned Parenthood would have needed to do is compare those patient files that we obtained in discovery to the abortion protocols that are contained in our addendum. It's clear for anyone to see that these were abortion-related follow-up examinations, as we explained in our brief. Planned Parenthood clearly knew that, and they clearly knew that Iowa Medicaid would not reimburse them if Iowa Medicaid knew. Despite all the evidence in the record that Ms. Berry has been able to obtain through the years, the district court dismissed her claim at summary judgment, found that there were no disputed facts, no material disputed facts, and denied her her day in court to present the evidence she's obtained to a jury. We think that's an injustice. We ask this court to correct that injustice by reversing the district court's summary judgment orders and remanding this case for further discovery and for trial. Unless there are any further questions from the court, I'll rest on my brief and ask the court to reverse. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted. The court will file a decision in due course.